United States Court of Appeals
Fifth Circuit

**F I L E D**

**October 17, 2006**

Charles R. Fulbruge III
Clerk

REVISED NOVEMBER 6, 2006

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

No. 04-51008

UNITED STATES OF AMERICA,

Plaintiff - Appellee

versus

CHERYL LEA POPE,

Defendant - Appellant

Appeal from the United States District Court
for the Western District of Texas

Before JOLLY, WIENER and DENNIS, Circuit Judges.

WIENER, Circuit Judge:

The panel majority has <u>sua sponte</u> reconsidered arguments made
by the dissenting opinion and has concluded that they are well
taken. As a result, we now withdraw our original panel majority
opinion and the dissenting opinion,[1] replacing them with the
following unanimous opinion, which affirms the Order of the
district court denying suppression as well as its judgment of
conviction by guilty plea and the sentence imposed.

Defendant-Appellant Cheryl Lea Pope entered a conditional plea
of guilty to a charge of conspiracy to manufacture methamphetamine,
reserving her right to appeal the district court's denial of her

---

[1] <u>United States v. Pope</u>, 452 F.3d 338 (5th Cir. 2006).

motion to suppress evidence obtained during a two-stage evidentiary search of her residence.  In the first stage, officers executed a search warrant issued for the purpose of uncovering evidence of a prescription-drug operation.  At the outset of that stage, officers observed evidence of a methamphetamine laboratory in plain view. That evidence formed the basis of a second warrant issued to search for evidence of a meth lab, the second stage of the search.

At the suppression hearing, the district court ruled that the initial stage was unconstitutional because it was grounded in a warrant issued on the basis of stale evidence.  The court nevertheless admitted the evidence from that unconstitutional search in reliance on the good faith exception to the exclusionary rule.  Under that ruling, evidence from both stages of the search of Pope's residence was admitted.

The parties do not contest the district court's determination that, because of the staleness problem, the first stage prescription-drug warrant was unsupported by probable cause. Instead, Pope disputes the district court's application of the good faith exception to the exclusionary rule to the facts of this case. Specifically, Pope contends that the <u>first</u> stage of the search does not qualify under the good faith exception to the exclusionary rule because (1) the officer who conducted the initial search of her residence submitted a "recklessly false" affidavit to the state district judge who authorized the search warrant, and (2) the affidavit supporting the first search warrant was "so lacking in

2

indicia of probable cause as to render an officer's belief in it unreasonable." We now hold that (1) because Pope did not make her falsity argument in the district court —— either in her motion to suppress or at the pre-trial hearing on that motion —— she has waived that contention for purposes of this appeal, and we are barred from considering it; and (2) the district court did not err in concluding that the original affidavit was sufficiently detailed to justify an officer's reasonable belief that it indicated probable cause to search Pope's residence. We thus affirm Pope's conviction and sentence.

## I. FACTS AND PROCEEDINGS

### A. The Search

On June 25, 2003, Officer Michael Baird bought six prescription pills from Pope as part of an undercover investigation into her alleged drug activity. During the ensuing 78 days, officers continued to investigate Pope and members of her family on suspicion of illicit drug trafficking. On or about September 9th, 2003, Baird received a tip indicating that Pope was cooking methamphetamine. Baird knew that he did not yet have probable cause to obtain a warrant to search Pope's residence for evidence of a meth lab but believed that he did have probable cause to justify a warrant based on the prescription drug violation. Following receipt of the meth-lab tip, he drafted a search warrant affidavit relating solely to the prescription-drug issue. In his

affidavit, Baird chose not to disclose his suspicion that Pope was operating a meth lab, but instead avowed that he was applying for "an evidentiary search warrant . . . . The purpose is to obtain evidence of a crime that has already been committed," i.e., evidence of the previous prescription-drug buy. A state district judge issued a search warrant and authorized Baird to execute it. Baird and other officers went to Pope's home to execute the search and observed evidence of meth production in plain view. Baird immediately left the premises to obtain a second warrant, this one to search for additional evidence of the meth lab.

## B. Suppression Proceedings

Pope filed a motion to suppress all evidence recovered from her home. In her motion, Pope argued that the first search warrant was invalid because (1) the facts related in Baird's affidavit were stale, depriving Baird of probable cause to search Pope's residence for anything, (2) Baird's affidavit was essentially conclusional in nature, i.e., a "bare bones" affidavit, and (3) the items listed in the warrant to be seized related exclusively to trafficking in illegal narcotics or money laundering, but Baird's affidavit mentioned only the single, ten-dollar prescription drug transaction that occurred 78 days earlier. Pope also contended that the infirmities in the first warrant effectively invalidated the second, the "fruit of the poisonous tree" argument. Finally, Pope insisted that, under the particular facts of this case, the

4

government could not rely on the "good faith" exception to the exclusionary rule.

The district court held that (1) Baird's affidavit was not conclusional, and (2) the items to be searched for did relate to the activity detailed in the affidavit, but (3) the warrant lacked probable cause because the information regarding the prescription-drug sale was stale. The court nevertheless denied Pope's motion to suppress, applying the "good faith" exception to Baird's initial search. In reaching this conclusion, the district court rejected Pope's argument that the "good faith" exception should not apply in this case, because the search warrant was based on an affidavit "so lacking in indicia of probable cause as to render an officer's belief in it unreasonable."[2]

## II.  ANALYSIS

### A.   Standard of Review

When a district court grants or denies a motion to exclude evidence, we review that court's factual findings for clear error.[3] We review its conclusions of law de novo.[4]

### B.   Analysis

---

[2] United States v. Leon, 468 U.S. 897, 918 (1984)(discussing instances in which an officer's claim of "good faith" reliance on a warrant's validity cannot be credited).

[3] United States v. Reyes-Ruiz, 868 F.2d 698, 701 (5th Cir. 1989).

[4] United States v. Alvarez, 127 F.3d 372, 373 (5th Cir. 1997).

**1. Law**

The exclusionary rule requires courts to suppress evidence seized on the basis of a warrant that is unsupported by probable cause.[5]  The purpose of the exclusionary rule is to deter unlawful police conduct.  As the Supreme Court has repeatedly observed:

> The deterrent purpose of the exclusionary rule necessarily assumes that the police have engaged in willful, or at the very least negligent, conduct which has deprived the defendant of some right.  By refusing to admit evidence gained as a result of such conduct, the courts hope to instill in those particular investigating officers, or in their future counterparts, a greater degree of care toward the rights of the accused.[6]

The exclusionary rule is not without limits, however.  As the Court cautioned, "[w]here the official action was pursued in complete good faith, however, the deterrence rationale loses much of its force."[7]  Therefore, if the officers obtained the evidence "in objectively reasonable good-faith reliance upon a search warrant," the evidence is admissible "even though the affidavit on which the warrant was based was insufficient to establish probable cause."[8]  The "good faith inquiry is confined to the objectively ascertainable question whether a reasonably well-trained officer would have known that the search was illegal despite the

---

[5] Mapp v. Ohio, 367 U.S. 343 (1961).

[6] Leon, 468 U.S. at 919 (quoting United States v. Peltier, 422 U.S. 531, 539 (1975)).

[7] Id. (quoting Peltier, 422 U.S. at 539).

[8] United States v. Satterwhite, 980 F.2d 317, 320 (5th Cir. 1992).

magistrate's authorization."[9]   In conducting the good faith inquiry, the court may examine "all of the circumstances" surrounding the issuance of the warrant.[10]   "[S]uppression of evidence obtained pursuant to a warrant should be ordered only on a case-by-case basis and only in those unusual cases in which exclusion will further the purposes of the exclusionary rule."[11]

**2.   Merits**

**a.   Pope's Arguments on Appeal**

As noted, the district court held that "the good faith exception applies to the... search warrant," i.e., a reasonably well-trained officer would not have known that the information provided in Baird's affidavit was stale, given the state district judge's authorization.   In its conclusions of law, the district court noted the exceptional circumstances in which the good faith exception does <u>not</u> apply, including,

> i.   when the magistrate or state judge issues a warrant in reliance on a deliberately false affidavit;
> ii.   when the magistrate or state judge abandons his or her judicial role and fails to perform in a neutral and detached fashion;
> iii. when the warrant is based on an affidavit so lacking in indicia of probable cause as to render an officer's belief in it unreasonable; and

---

[9] <u>Leon</u>, 468 U.S. at 922 n.23.

[10] <u>Id.</u>; <u>accord</u> <u>United States v. Payne</u>, 341 F.3d 393, 400 (5th Cir. 2003).

[11] <u>Leon</u>, 468 U.S. at 918.

7

> iv. when the warrant is so facially deficient that it fails to particularize the place to be searched or the items to be seized.[12]

On appeal, Pope contends that both the first and third of these exceptions to the good faith exception should apply in this case. She argues that Baird's affidavit was "recklessly false" because (1) he failed to disclose to the state district judge that the "real purpose" for seeking the warrant was to find evidence of a meth lab, and (2) no well-trained officer reasonably would believe that probable cause existed —— based on a ten-dollar prescription-drug purchase —— to seize any of the items listed in the search warrant. She also argues that the affidavit on which the first search warrant was based was "bare bones," i.e., "so lacking in indicia of probable cause as to render an officer's belief in it unreasonable."

### b. Pope's Theories in the District Court

Crucially, however, Pope advanced only the "bare bones affidavit" contention in the district court. She stated in her motion to suppress that "the Leon Court established four exceptions to this [exclusionary] rule, **one of which**, the 'bare bones affidavit' exception, is relevant here."[13] Nowhere in her motion did Pope even suggest that Baird lied in his affidavit by

---

[12] Id. at 914.

[13] Emphasis added.

8

concealing or deliberately omitting from the state district judge the "real purpose" for wanting to search Pope's residence. She certainly never argued the point to the district court sufficiently to place it before that court for it to consider and decide.

At the suppression hearing, Pope's counsel did question Baird about his decision not to tell the state district judge about Baird's suspicions that Pope was cooking meth when he asked for the search warrant. Baird responded that he did not mention his suspicions because he did not believe that they rose to the level of probable cause, and because he wanted his affidavit to "stand on its own." Pope's counsel also asked Baird why the officers accompanying him to Pope's residence wore protective gear. Baird answered that the officers wore protective gear as a precaution, based on the possibility that they might encounter a meth lab. Baird remained steadfast, however, that "the intent of the search warrant was to find mere evidence of a previous [prescription-drug] buy."

Exactly what Pope's counsel hoped to achieve through this line of questions is not clear, and we are loath to speculate about that now. At the conclusion of Baird's testimony, though, the district court asked Pope's counsel to reiterate and clarify Pope's <u>legal</u> position. It presumably did so to ensure that its ruling would address all issues that she sought to raise, including any that she may have raised during the suppression hearing that were not included in her written motion. In response, Pope's counsel

9

identified only those arguments made in her motion to suppress, viz., that (1) the affidavit was based on stale information, (2) the affidavit was "bare bones," and (3) the good faith exception cannot apply because Baird's affidavit was totally lacking in indicia of probable cause. Although these claims challenge the sufficiency of Baird's affidavit to support either the state district judge's determination that probable cause existed or Baird's good faith in relying on that determination, none challenges its truthfulness. Prior to appeal, Pope simply did not assert that Baird lied in his affidavit about the "real purpose" of his proposed search.

### c. The District Court's Decision

This omission is confirmed in the district court's conclusions of law regarding the Leon good faith exception. In addressing whether any of the "exceptions to the exception" would preclude Baird's good faith reliance on the facially valid search warrant, the district court spoke to each exception in turn:

> Therefore, although the affidavit must be considered stale, as discussed supra, the good faith exception applies. Here, the information the state district judge relied on **was not false in that the Officer admitted that the sale took place in June.** There is no evidence, and the Defendant does not argue that the state district judge abandoned his role as neutral when deciding if a search warrant should issue in this case. The Officer testified that because he wanted the affidavit to stand on its own, he never mentioned to the state district judge that there was also a reasonable suspicion that

10

> Defendant Pope was involved in meth production. Because the affidavit recounts the illegal sale in detail, the affidavit cannot fail as a bare bones affidavit and finally, the place to be searched and the items to be seized are explicit. Not only had the Officer been to the home, but business or bank records are precisely the sorts of items which people tend to keep in their home for a long period of time.[14]

As the district court saw it, the only question related to the affidavit's truthfulness was whether Baird had told the truth about <u>when</u> the prescription pill transaction took place. The court addressed Baird's failure to mention his meth-related suspicions only to reinforce its conclusion that the neutrality and detachment of the state district judge had not been affected by Baird's unrevealed motive. Similarly, the court mentioned the items to be seized only to determine whether, given Baird's statements, they were "explicit" enough to preclude a finding that the warrant was "facially deficient"; <u>not</u> to determine whether Baird's affidavit stating his belief that such items would be found at Pope's residence was "recklessly false."

### d. Pope's "Falsity" Argument Was Waived

Put simply, the district court decided the motion to suppress based on the issues presented to it. We may review the propriety of that decision, then, only within that framework. We may not test it on grounds or theories never presented to that court in the first place. If Pope believed that Baird's "real purpose" for

---

[14] Emphasis added.

11

pursuing the prescription-drug search was to look for evidence of a meth lab, and the statement of purpose in his affidavit was, therefore, "deliberately or recklessly false," she should have made that point in her motion to suppress or at the suppression hearing. Only the district court had a real opportunity to assess the weight of the evidence — particularly Baird's credibility — on this point.

We have held that a "a defendant who fails to make a timely suppression motion cannot raise that claim for the first time on appeal."[15] We have also held that failure to raise specific issues or arguments in pre-trial suppression proceedings operates as a waiver of those issues or arguments for appeal.[16] The reasons for such a rule are obvious, beginning, of course, with Fed. R. Crim. P. 12(b)(3)(C), which requires that a motion to suppress evidence be raised before trial. In Chavez-Valencia, we observed that "[i]f, at trial, the government assumes that a defendant will not

---

[15] United States v. Chavez-Valencia, 116 F.3d 127, 130 (5th Cir. 1997)(finding its conclusion "supported by the language, history, and structure of [Federal Rules of Civil Procedure] 12(b)(3) and 12(f), by Fifth Circuit precedent, by the case law of our sister circuits, and by sound policy considerations").

[16] See United States v. Harrelson, 705 F.2d 733, 738 (5th Cir. 1983) ("[f]ailure to move pre-trial for suppression, or to assert a particular ground in the suppression motion, operates as a waiver") (emphasis added and citations omitted); see also United States v. Carreon-Palacio, 267 F.3d 381, 389 (5th Cir. 2001)(suppression argument not preserved for appeal when not raised during suppression hearing below); United States v. Medina, 887 F.2d 528, 533 (5th Cir. 1989) ("in order to preserve an issue for appeal, the grounds for an objection must be stated specifically").

seek to suppress certain evidence, the government may justifiably conclude that it need not introduce the quality or quantity of evidence needed otherwise to prevail."[17]  Furthermore, "if a suppression motion is made before trial, the government may appeal an adverse ruling . . . . [But] if the court considers suppression motions after jeopardy attaches, the government loses this right."[18] Also, "little deterrence of unacceptable police conduct is lost by refusing to review suppression claims not raised in the district court."[19]

Even though Chavez-Valencia involved a defendant's failure to move to suppress evidence, these rationales apply with equal force when a defendant who has filed a motion to suppress makes a new or different suppression argument for the first time on appeal.  In this case, the government was never put on notice that Pope would argue that Baird's undisclosed suspicions of meth production rendered his affidavit "recklessly false."  It had no reason, therefore, to reinforce Baird's unchallenged statement that his purpose was to find evidence related to the previous prescription-drug transaction.  The brief cross-examination of Baird on this point, although perhaps raising the specter of some strategic subterfuge on his part, fell far short of providing the government

---

[17] Chavez-Valencia, 116 F.3d at 132.

[18] Id.

[19] Id.

notice that Pope was challenging the truthfulness of Baird's affidavit. It would be patently prejudicial to the government for us to make an effectively unreviewable factual finding on this point now, especially without the benefit of witnessing Baird's live testimony.

Even more importantly, the <u>district court</u> was never notified that it was to decide whether, by omission or commission, Baird lied to the state district judge about the "real purpose" for seeking authority to search Pope's residence. For us to consider this argument now would run counter to axiomatic principles of appellate review, and we decline to do so.[20] The government did note, in its response to Pope's motion to suppress, that "[t]here was no evidence of deliberate recklessness... in the affidavit." This assertion was not a direct response to any argument by Pope, however, but only a matter-of-fact assessment made while briefly acknowledging the inapplicability of each of the four exceptions to the good faith exception to the exclusionary rule —— even those

---

[20] Even were we to regard Pope's argument as merely <u>forfeited</u> and subject the district court's decision to plain error review, we would find no such error. Under the plain error standard, the "appellant must show clear or obvious error that affects his substantial rights; if he does, this court has discretion to correct a forfeited error. . . ." <u>United States v. Gordon</u>, 346 F.3d 135, 137 (5th Cir. 2003). Here, the district court's failure to find that Baird's affidavit in support of the first search warrant was "recklessly false" was not clearly or obviously erroneous. Baird's testimony at the suppression hearing provided ample basis for the court to credit the truthfulness of his stated purpose for seeking the initial search warrant.

14

that Pope did not assert should apply. Similarly, the district court concluded that "the information the state district judge relied on was not false in that the Officer admitted that the sale took place in June." This conclusion, however, only addresses the potential falsity of the allegation in the context of Pope's successful staleness claim; i.e, whether Baird lied in his affidavit about the <u>date</u> of the prescription-drug buy. This conclusion has no bearing on the claim, which Pope now urges for the first time, that Baird lied (by reckless omission) about the "real purpose" for his search of Pope's residence. As noted, Pope's failure to raise this issue in the district court bars our consideration whether Baird's decision not to reveal his suspicions about Pope's meth production to the state district judge rendered the affidavit "recklessly false."

### e. "Bare Bones" Affidavit

We review <u>de novo</u> the district court's rejection of Pope's properly preserved claim that Baird's reliance on the first search warrant was unreasonable because his affidavit supporting that warrant was "so lacking in indicia of probable cause as to render officer's belief in its existence unreasonable." We agree with the district court that Baird's affidavit, limited as it was to facts concerning the previous prescription-drug transaction, was not a "bare bones" affidavit. "Bare bones" affidavits typically "contain wholly conclusory statements, which lack the facts and

15

circumstances from which a magistrate can independently determine probable cause."[21] Generally, examples of "bare bones" affidavits include those that merely state that the affiant "has cause to suspect and does believe" or "[has] received reliable information from a credible person and [does] believe" that contraband is located on the premises.[22] That is not the case here. Baird's affidavit was based on his direct participation in the illegal drug transaction with Pope and his continuing investigation of such activity. As the district court noted, the affidavit "outlined in detail the illegal sale that [Pope] undertook with [Baird]." We hold, therefore, that Baird's reliance on the first search warrant, issued on the basis of his affidavit, was not unreasonable, and that the district court correctly applied the good faith exception to the exclusionary rule in denying Pope's motion to suppress the evidence recovered from her residence.

### III.  CONCLUSION

As Pope made her "falsity" argument for the first time on appeal, she waived it. We are therefore barred from addressing it. The district court did not err in concluding that Baird's affidavit was not "bare bones," or that his reliance on the warrant issued on

---

[21] United States v. Satterwhite, 980 F.2d 317, 321 (5th Cir. 1992).

[22] See United States v. Brown, 941 F.2d 1300, 1303 n.1 (5th Cir. 1991) (quoting Nathanson v. United States, 290 U.S. 41, 54 (1933) and Aquilar v. Texas, 378 U.S. 108, 114-15 (1964)).
.

16

the basis of that affidavit was reasonable, and thus in good faith.

Accordingly, Pope's conviction and sentence are

AFFIRMED.