United States Court of Appeals
Fifth Circuit

**F I L E D**

**July 17, 2007**

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 05-51590

UNITED STATES OF AMERICA,

Plaintiff - Appellee.

VERSUS

RUBEN SUMMERS,

Defendant -Appellant.

Appeal from the United States District Court
For the Western District of Texas
5:03-CR-241-2

Before HIGGINBOTHAM, DAVIS, and BARKSDALE, Circuit Judges.

PER CURIAM:[*]

Defendant Ruben Summers appeals two aspects of his conviction on drug and firearm offenses. He asserts that the district court erred in denying his motion to suppress and argues that his conviction should be reversed because of improper statements by the government during closing arguments. Based on our review of the record and consideration of the briefs of the parties and for the reasons set forth below, we affirm.

I.

Texas Department of Public Safety Narcotics Service Sergeant Trefger testified that working undercover he had purchased cocaine powder from Charles Benging on March 14, 2003,

---

[*] Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

and again on April 30, 2003. Around May 14, 2003, Trefger negotiated with Benging to buy four ounces of crack cocaine for $2200. Trefger knew that Benging would be taking him to his source to obtain the crack. Trefger arranged for an unmarked police unit to follow them to the source's unknown location, a transmitting device and a pre-arranged verbal arrest signal. Two teams of officers were to monitor Trefger's conversations with Benging and follow them to the source's location.

On May 15th, 2003, Trefger picked up Benging at his residence. Benging directed him to the source's residence. On the way, Benging warned Trefger that the source wanted Trefger to go inside the residence to be checked for wires and weapons. Benging also told Trefger that the source had weapons inside, including maybe an automatic weapon. Trefger refused to go into the house. Instead he parked at the curb and sent Benging inside with half the purchase price so Benging could purchase half of the crack cocaine. Benging entered the residence and returned two minutes later, hiding a package under his shirt. Benging re-entered Trefger's car and handed him what appeared to be two crack cocaine cookies. Trefger asked if "the guy inside the residence had the rest of the crack cocaine, the other two ounces." Benging responded that he did and asked Trefger if he had scales to weigh the drugs. Trefger remarked that "it looks good" which was the pre-arranged arrest signal.

Officers immediately arrested Benging as he was sitting in Trefger's vehicle parked in front of the source's house. Concerned that the source would see the arrest and destroy the remaining drugs, officers entered the residence. They saw a loaded .9 millimeter Beretta pistol on the living room sofa and a digital scale on the kitchen table. Sweeping through the living room and kitchen, the officers ran out the back door to the yard and arrested Summers near the side of

2

the house.

Summers was brought back to the residence and read his rights. Summers indicated that he wanted to talk and was taken into the master bedroom. Summers gave consent to search the house, first verbally and later executing a written consent. Summers confessed that he had given the two ounces of crack cocaine to Benging. During the search, officers discovered the buy money in the back yard, two ounces of cocaine in an adjoining yard and a loaded .9 millimeter magazine in another adjoining yard.

While transporting Summers to the courthouse, Trefger asked Summers if he had thrown the cocaine and the magazine over the fence because he was scared. Summers nodded his head yes and said "What would you have done if you'd been in my shoes?" Summers later admitted that he had seen the officers arrest Benging.

At trial, Summers denied selling drugs to Benging. He testified that two weeks prior to his arrest he had talked to Benging about selling him his dog. The day of his arrest, Benging showed up at his house with four $100 bills to buy the dog. Summers asked Benging to get smaller bills, because none of the merchants where Summers would use the money would be willing to accept a $100 bill. While Benging went to fetch the smaller bills, Summers walked to the back yard to retrieve the dog's bone and dish. Within minutes he was confronted by officers and arrested. He denied giving consent to search the house or confessing to Trefger.

Summers' mother testified that the house was her residence that she shared with the defendant. On May 15th she was at work. The gun was hers, which she said she kept unloaded on a closet shelf.

Defendant Ruben Summers was charged, with others, in three counts with conspiracy to

3

distribute cocaine base, in violation of 21 U.S.C. § 846, 21 U.S.C. § § 841(a)(1) and 841(b)(1)(A)(iii), possession with intent to distribute cocaine base and aiding and abetting that offense, in violation of 21 U.S.C. § § 841(a)(1), 841(b)(1)(A), and 18 U.S.C. § 2, and possession of a firearm in furtherance of a drug trafficking offense, in violation of 18 U.S.C. § 924 (c)(1)(A). Prior to trial, Summers filed motions to suppress evidence and his statements, which were denied after a hearing. Summers proceeded to a jury trial and was convicted on all counts. The district court sentenced him to 188 months in prison on the drug charges, and a consecutive 60 month term of imprisonment for the firearm offense. Summers appeals.

II.

Summers argues first that the district court's denial of his motions to suppress violated his Fourth Amendment rights because the exigent circumstances relied upon to execute the warrantless search of his home were created by government agents. Summers filed three suppression motions in the district court. None of the motions mention this argument. Nor was this argument raised orally at the suppression hearing. The district court's Order Denying the Motion to Suppress does not mention this argument. Summers argued to the district court that the officers' search of his person and premises were illegal because the search and arrest were without probable cause and without a valid warrant. He also contended that consent to search was not voluntarily given. The government thus argues that Summers' government-created exigent circumstances argument is waived.

In United States v. Pope, 467 F.3d 912, 918-19 (5th Cir. 2006), this court explained that the failure to raise specific issues or arguments in a pre-trial suppression motion waives those issues or arguments on appeal. In Pope, the defendant argued on appeal that the good faith

4

exception did not apply because the warrant was issued in reliance on a deliberately false affidavit and the warrant was bare bones. Before the district court, the defendant raised only the bare bones argument. Based on Pope, because the government-created exigent circumstances argument was not raised before the district court, Summers has waived this argument on appeal. Summers raises no other issues in relation to the denial of his motion to suppress.

III.

Summers argues next that the prosecutor made improper remarks in his closing argument. Referring to Summers' testimony that Benging was at his house to purchase a dog, not crack cocaine, the prosecutor remarked during his rebuttal closing argument,

> Finally, and most telling [defense counsel] stood there for 25 minutes and talked to you. How many times did he mention the defendant's own theory of the case, the dog? Not once. Could it be because he didn't want to suborn perjury?

Defense counsel objected, stating that his comments were improper argument. The district court immediately sustained the objection and defense counsel requested a mistrial. The district court denied the motion and instructed the jury to disregard the last statement. Summers argues that the prosecutor implied that he had personal knowledge about why defense counsel did not mention Summers' testimony about the dog and suggested that even defense counsel did not believe his own client. Summers argues that such argument was improper and requires reversal.

Review of a claim of prosecutorial misconduct entails two steps. United States v. Fields, 72 F.3d 1200, 1207 (5th Cir. 1996). First, the court must determine whether the prosecutor made an improper remark. Id. If the comment is inappropriate, the second determination is whether it caused prejudice to the defendant's substantial rights. Id.

> [W]e consider whether the prosecutor's comments deprived defendants of a fair trial in light of factors that have guided us in the past: the magnitude of the

5

prejudicial effect of the statements, the efficacy of any cautionary instructions, and the strength of the evidence of defendant's guilt.

United States v. Jones, 839 F.2d 1041, 1050 (5th Cir. 1988). Applying these standards, the improper comments in this case do not require reversal.

In Jones, the prosecutor directly accused the defense of sponsoring perjury. The trial judge denied the defense's immediate motion for a mistrial and instructed the jury to disregard the remark. Although this court recognized that the comment was "reprehensible," it did not reverse the defendant's conviction. Looking at the magnitude of the prejudicial effect, the court noted that the jury had ample reason to disbelieve the witness whose credibility was attacked even in the absence of the prosecutor's accusatory comments. It also noted that the prosecutor's comments struck at an aspect of the case that had little bearing on guilt. These aspects, coupled with the trial judge's immediate curative instruction and other adequate proof linking the defendant to the crime, provided sufficient basis to find that the error was harmless.

In United States v. Hitt, 473 F.3d 146, 161 (5th Cir. 2006), the government argued that a defendant had perjured himself and then improperly bolstered that argument by stating that, if the defendant had not perjured himself, his counsel and the court would have corrected him. This use of personal knowledge to bolster an argument is clearly improper. Under plain error review, this court found no need for reversal because it was an isolated statement in a lengthy closing, the district court had cautioned the jury before opening statements that arguments of counsel were not evidence and gave a written instruction of the same type.

In this case, the prosecutor's comments stopped short of accusing the defense of suborning perjury, but arguably implied personal knowledge to bolster his argument. Even if the statement was improper, it was an isolated comment in the rebuttal portion of closing arguments

6

and a cautionary instruction to disregard it was immediately given to the jury.  In addition, the prosecution's case against Summers was overwhelming.  Any error associated with the prosecutor's remarks in this case was harmless.

IV.

For the foregoing reasons, Summers' conviction is AFFIRMED.