IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

July 30, 2008

Charles R. Fulbruge III
Clerk

No. 06-40757

UNITED STATES OF AMERICA

Plaintiff–Appellee

v.

SAMUEL E. BAKER, JR.

Defendant–Appellant

Appeal from the United States District Court
for the Southern District of Texas

Before JOLLY, CLEMENT, and OWEN, Circuit Judges.

PRISCILLA R. OWEN, Circuit Judge:

A jury convicted Samuel Baker of possessing, receiving, and distributing child pornography in violation of 18 U.S.C. §§ 2252 and 2252A. He appeals, arguing that the district court erred by failing to suppress images seized pursuant to a search warrant and by admitting documents and images purportedly provided to law enforcement authorities by the National Center for Missing and Exploited Children (NCMEC). We vacate his conviction on Count 1, affirm his convictions on Counts 2, 3, and 4, and remand for re-sentencing with regard to a special assessment.

I

Yahoo! Inc. (Yahoo) discovered that someone using an e-mail account named "jmiller4012@yahoo.com" had posted forty-six images of child pornography to a group Web site called the "jokerswilder" that was hosted by Yahoo, but administered by members of the public. The jmiller4012 account had been created two days before Yahoo found that this account had been used to upload the child pornography images. Pursuant to 42 U.S.C. § 13032(b)(1), Yahoo reported this incident to the NCMEC, a national clearinghouse for information about children believed missing or sexually exploited. As also required by § 13032(b)(1), the NCMEC reported the matter to appropriate laws enforcement authorities. Detective Lori Rangel of the Dallas Police Department Child Exploitation Unit, Internet Crimes Against Children Task Force, initiated an investigation.

Rangel ultimately traced the jmiller4012 e-mail address to Baker. She first subpoenaed Yahoo to obtain its records regarding the jmiller4012 account, and Yahoo responded with the account's details, including the date on which it was created and the Internet Protocol (IP) address used to create it. An IP address is a unique number. Testimony at trial reflected that it can be associated with a computer's modem, but that for dial-up users like Baker, the IP address is not linked directly to a computer's modem. A discreet range of IP numbers is assigned to dial-up Internet service providers, and Rangel traced the IP address she was given by Yahoo to Valley Telephone Coop. She then issued a subpoena to Valley Telephone, asking for subscriber information associated with the IP address she received from Yahoo. In response, Valley Telephone provided Baker's name and residence address. Rangel then referred the case to

the Cyber Crimes Unit of the Texas Attorney General's office, where it was assigned to Sergeant Dave Dodge.

Dodge reviewed the images and determined that he had probable cause to believe that Baker possessed child pornography in violation of section 43.26 of the Texas Penal Code. He prepared and signed an affidavit in support of a search warrant. Based on this affidavit, a magistrate judge issued a warrant to search Baker's home and to seize all computer hardware, software, and peripherals believed to contain child pornography. Officers executed the warrant the next day and took custody of Baker's home computers and diskettes. In addition, Baker's employer voluntarily gave the police Baker's work computer and 134 diskettes from Baker's office. A forensic analyst recovered hundreds of images of child pornography from these sources.

Baker was subsequently indicted on federal charges based on 18 U.S.C. §§ 2252 and 2252A for (1) distributing in interstate commerce forty-six images of minors engaging in sexual conduct, (2) receiving by means of a computer forty-six images of minors engaging in sexual conduct that had been transported in interstate commerce, (3) receiving by means of a computer more than 600 images of minors engaging in sexual conduct that had been transported in interstate commerce, and (4) possessing more than 600 images of child pornography that had been transported in interstate commerce.

Prior to trial, Baker filed a motion to suppress the evidence seized at his home. The district court held a hearing and denied the motion. A jury ultimately convicted Baker on all four counts. The district court sentenced Baker to 240 months in prison on each count, to be served concurrently; a supervised release term of life; and a special assessment of $100 for each count.

Baker appeals his conviction on several grounds. First, he contends that the district court erred in denying his motion to suppress the evidence obtained from his home. Second, Baker argues that the Government offered an insufficient evidentiary foundation for the court to admit two exhibits. Finally, Baker asserts that the district court erred by admitting these exhibits in violation of his Sixth Amendment right to confrontation. We first consider the issues surrounding the search warrant.

II

Baker contends that the district court erred in denying his motion to suppress because, he asserts, Dodge gave false information or "showed a grossly reckless disregard for the truth" in his affidavit that served as the basis for the warrant obtained to search Baker's residence and to seize his computer and other items. The affidavit Dodge submitted correctly identified the IP address Yahoo had said was associated with the jmiller4012 account, but the affidavit incorrectly stated that the IP address was the same one from which images of child pornography were uploaded to the jokerswilder Web site. Yahoo did not determine the IP address from which the images were uploaded. It only determined that the IP address at issue was associated with the jmiller4012 account at the time it was created. Baker contends that Dodge's misstatement was intentional or was made with reckless disregard for the truth.

Baker's brief in this court does not accurately reflect the procedural posture of this case with regard to this issue. The district court denied Baker's pretrial motion to suppress. But the argument he presents on appeal regarding the warrant was not raised in that motion or at any other time before, during, or after trial as a basis for suppressing evidence.

Baker's pretrial motion to suppress challenged the search warrant on several grounds, including the fact that there were blanks in the affidavit that Dodge submitted in support of the warrant. Dodge prepared the affidavit on his office computer, which displayed the jmiller4012 e-mail address in blue. He printed the affidavit using a different computer and printer while he was in another county, just prior to presenting it to the magistrate. The printer left blank spaces in place of printing the items displayed on the computer screen in blue. Notwithstanding the blanks in Dodge's affidavit, the district court found that the magistrate had a substantial basis for concluding probable cause existed to believe a crime had been committed and evidence of that crime could be found at Baker's residence. Baker has not pursued in this appeal his contentions about the effect of the blanks on the warrant's validity or any other of the matters raised in the motion to suppress. His complaint in this court is limited solely to an argument that at the time Dodge prepared his affidavit, he knew that Yahoo could not identify the specific IP address from which the images were uploaded to the jokerswilder site. Yahoo knew only that the IP address was used by the person who established the jmiller4012 e-mail address and account at the time the account was created, which was two days before the child pornography images were discovered by Yahoo, and that the jmiller4012 e-mail address was used to upload the images to the jokerswilder Web site.

Baker first asserted that Dodge had made false statements in his affidavit at the conclusion of a sanctions hearing not pertinent here. At the end of that hearing, counsel for the parties began to discuss with the court whether Rangel would be a witness at trial. Baker's counsel asserted that he needed her testimony to establish that Dodge had testified falsely at the suppression hearing and in his affidavit to obtain the search warrant. The district court

directed counsel for Baker to identify the page and line of Dodge's allegedly false testimony and to tie that to what Baker wanted Rangel to refute. Baker's counsel said he would undertake to do so, but the record reflects no further proceedings in this regard.

At trial, Dodge admitted that he made incorrect statements in paragraph seven of the affidavit he submitted to obtain a warrant to search Baker's home. Dodge testified that he knew Yahoo did not know the IP address or date of the uploads to the jokerswilder Web site and that Rangel had told him this. Dodge explained that his statements in paragraph seven indicating that the IP address used to create the account was "the same IP address that was used on Tuesday, October 19, 2004, when Suspect, [blank space], uploaded 46 images of child pornography to the Yahoo group" was "a mistake" and an "error." In response to repeated questions from Baker's counsel, Dodge testified several times that he meant to say "e-mail address" instead of "IP address."

Baker did not move to strike any evidence after this testimony was elicited. At the close of the government's case, Baker moved for an acquittal under Rule 29 of the Federal Rules of Criminal Procedure, but he did not request any remedy for the incorrect information in paragraph seven of Dodge's affidavit. He argues, for the first time on appeal, that this court should strike the incorrect references to the IP address from the affidavit to determine whether that affidavit established probable cause for the search warrant.

We are aware that there is a division of authority among the circuit courts as to whether arguments not raised in a motion to suppress are waived or are

6

merely forfeited and subject to plain-error review[1] using the standard established in United States v. Olano.[2] However, this court held in United States v. Pope that an issue not raised in a motion to suppress in the trial court is waived, citing Rule 12(b)(3)(C) of the Federal Rules of Criminal Procedure and prior decisions of this court.[3] The Pope decision considered at some length

---

[1] Compare United States v. St. Pierre, 488 F.3d 76, 79 n.2 (1st Cir. 2007) (holding that "by not objecting to treating the $380 as outside of the original suppression motion and order" the defendant's contention that this evidence should be suppressed would be reviewed for plain error on appeal), United States v. Johnson, 415 F.3d 728, 730 (7th Cir. 2005) ("We think, however, that in context the word 'waiver' in Rule 12(e) does not carry the strict implication of an 'intentional relinquishment of a known right' that precludes all appellate review. . . . [T]here is no indication that Johnson intentionally decided to abandon his Miranda argument, and so we view his argument as forfeited and subject to plain error review."), and United States v. Buchanon, 72 F.3d 1217, 1227 (6th Cir. 1995) (holding that although a defendant argued generally that he was illegally seized in violation of his Fourth Amendment rights, he forfeited his pre-sniff seizure argument by not raising it with specificity and review was for plain error), with United States v. Brooks, 438 F.3d 1231, 1239-40 (10th Cir. 2006) ("When a motion to suppress evidence is raised for the first time on appeal, we must decline review."), United States v. Hansen, 434 F.3d 92, 104 (1st Cir. 2006) ("We interpret the mandatory language of Rule 12 broadly to include waiver when a defendant fails to file a motion to suppress before trial, and have even extended waiver to a situation where a suppression motion was filed, but the defendant did not include a particular ground and wished to add it later."), and United States v. Abboud, 438 F.3d 554, 567-68 (6th Cir. 2006) ("A motion to suppress evidence must be made before trial. If a defendant does not make such a motion, he waives the claim." (internal citations omitted)). In addition, some courts have applied plain error review in this context without explicitly stating whether the argument was forfeited or waived. See, e.g., United States v. Stevens, 487 F.3d 232, 242 (5th Cir. 2007) ("Because Raul Stevens raises his Miranda-based argument for the suppression of his statement of consent for the first time on appeal, we review for plain error."); United States v. Young, 350 F.3d 1302, 1305 (11th Cir. 2003) ("Young never asserted this theory in his own motion to suppress. Accordingly, we review the district court's ruling for plain error.").

[2] 507 U.S. 725 (1993).

[3] 467 F.3d 912, 918-19 (5th Cir. 2006) ("We have held that [a] 'defendant who fails to make a timely suppression motion cannot raise that claim for the first time on appeal.' We have also held that failure to raise specific issues or arguments in pre-trial suppression proceedings operates as a waiver of those issues or arguments for appeal.") (quoting United States v. Chavez-Valencia, 116 F.3d 127, 130 (5th Cir. 1997) and citing United States v. Harrelson, 705 F.2d 733, 738 (5th Cir. 1983)).

7

reasons supporting its conclusion that arguments not urged in a motion to suppress may not be considered on appeal.[4] Nevertheless, the Pope decision also conducted a plain-error analysis and concluded there was no plain error[5] as did our court in United States v. Maldonado.[6] We follow the same course today.

Baker contends that the good-faith exception to the exclusionary rule does not apply because of Dodge's false statements. Even assuming that Baker forfeited rather than waived his argument, he has not demonstrated that the district court plainly or otherwise erred in failing to find that Dodge intentionally or recklessly made erroneous statements in his affidavit. The affidavit was lengthy, detailed, and it recounted information obtained from Yahoo through the cyber tip and pursuant to a subpoena. Dodge testified that he made a mistake by referring to "IP address" rather than "e-mail" address. The district court did not plainly err in accepting this explanation.

## III

Baker also contends that all four of his convictions should be reversed because the district court erred in admitting two exhibits, Government Exhibit 8, which purports to be a report from the NCMEC, and Government Exhibit 3, which is a three-ring binder containing printouts of forty-six images identified by filename in the full NCMEC report and stored in electronic format on a disc that accompanied that report. Baker argues that these exhibits were the only

---

[4] Pope, 467 F.3d at 919-20.

[5] Id. at 920 n.20 ("Even were we to regard Pope's argument as merely forfeited and subject the district court's decision to plain error review, we would find no such error.").

[6] 42 F.3d 906, 913 (5th Cir. 1995) ("[I]t is far from clear that there was error. But, even assuming error, it was not 'plain'.").

evidence from which the jury could have concluded that he was guilty as charged in Count 1 for distributing child pornography by means of a computer. He further contends that the admission of these exhibits prejudiced him with regard to the other three counts on which he was found guilty because this evidence undermined his contention at trial that he did not know that any of the images at issue in Counts 2, 3, or 4 were on his home or work computers. He contends they were downloaded by others.

Baker assails the admission of Government Exhibits 3 and 8 on numerous grounds, arguing that the Government offered no predicate or foundation for their admission, that the NCMEC report is a law enforcement report that is inadmissible under Rule 803(8)(B) and (C) of the Federal Rules of Evidence,[7] and contending, for the first time on appeal, that admission of these exhibits without a witness with personal knowledge of their preparation and content violated his Sixth Amendment right to confrontation. Because we agree with Baker that Exhibits 3 and 8 were erroneously admitted without any foundation or predicate and that this error was harmful, we do not reach Baker's other contentions.

Baker contends the Government presented no foundation for admitting the forty-six images that he allegedly uploaded. That complaint is a valid one. There was no competent evidence identifying the forty-six images or their

---

[7] FED. R. EVID. 803(8)(B) ("The following are not excluded by the hearsay rule, even though the declarant is available as a witness: . . . Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth . . . (B) matters observed pursuant to duty imposed by law as to which matters there was a duty to report, excluding, however, in criminal cases matters observed by police officers and other law enforcement personnel, or (C) in civil actions and proceedings and against the Government in criminal cases, factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness.").

filenames, contained respectively in Exhibits 3 and 8, as the forty-six images that Yahoo determined had been uploaded to the jokerswilder Web site from the jmiller4012 e-mail address. A witness from Yahoo testified at trial as the custodian of at least part of the "cyber tip" that Yahoo made, as required by law,[8] to the NCMEC. A printed copy of a two-page summary of the full NCMEC report and two internal Yahoo tracking documents were authenticated by a witness from Yahoo and entered into evidence as Government Exhibit 1 without objection. Exhibit 1 did not contain any images or filenames of images. The Yahoo witness testified at trial that Yahoo had determined that forty-six images that it suspected depicted child pornography had been uploaded to the jokerswilder Web site by someone using the jmiller4012@yahoo.com e-mail address, and Yahoo forwarded these images to the NCMEC. This witness also confirmed that the jmiller4012 Yahoo e-mail address was unique. That address was assigned to only one user. The Yahoo witness further testified that whoever applied to Yahoo to use this e-mail address was using 216.183.37.230 as his or her IP address at that time. Other evidence tied that IP address to Baker's residence. However, the Yahoo witness did not identify any images or the filenames of any images. Although the NCMEC report states that the images it contains were sent to it by Yahoo and that Yahoo told NCMEC these were the images that were uploaded from the jmiller4012 e-mail address, the Government

---

[8] See 42 U.S.C. § 13032(b)(1) ("Whoever, while engaged in providing an electronic communication service or a remote computing service to the public, through a facility or means of interstate or foreign commerce, obtains knowledge of facts or circumstances from which a violation of . . . Title 18, involving child pornography (as defined in section 2256 of that title), or a violation of section 1466A of that title, is apparent, shall, as soon as reasonably possible, make a report of such facts or circumstances to the Cyber Tip Line at the National Center for Missing and Exploited Children, which shall forward that report to a law enforcement agency or agencies designated by the Attorney General.").

established no foundation at trial for the admission of the full NCMEC report, either by affidavit or live testimony.

Baker objected to the admission of Exhibit 8, which, as noted, was a hard copy of the NCMEC report that contained the filenames of forty-six images, but not the images themselves, on the basis that there was no foundation for its admission. He also requested that he be permitted to voir dire the witness through which this exhibit was offered (Dodge), but the district court denied that request. Baker did not, however, object on the basis of improper foundation for the admission of printouts of the forty-six images, which comprised Exhibit 3. Accordingly, we review the admission of Exhibit 8 for abuse of discretion[9] and the admission of Exhibit 3 under the plain-error standard.[10]

Baker contends that assuming, without conceding, the NCMEC report might otherwise have been admissible as a business record under Rule 803(6) or as a public record under Rule 803(8), the report was not authenticated. The Government does not address this argument. It instead appears to construe Baker's complaint in this regard as a hearsay argument and merely asserts that the NCMEC report and the images from it are admissible as public records under Rule 803(8).

The Government's position misses the mark. Regardless of whether Exhibit 8 falls within the ambit of Rule 803(6) or Rule 803(8), issues we do not resolve, the Government did not authenticate Exhibit 8, which is necessary as a predicate for admission under either rule. The means of authenticating records of regularly conducted activity under Rule 803(6) are found within that

---

[9] United States v. Guidry, 456 F.3d 493, 501 (5th Cir. 2006).

[10] See United States v. Thompson, 454 F.3d 459, 464 (5th Cir. 2006).

11

rule.[11] Various means of authenticating public records, including self-authentication, are contained in Rules 901[12] and 902.[13]

The only witness who identified the NCMEC report and the forty-six images at trial was Dodge, the investigator from the Texas Attorney General's office who was assigned to lead its investigation of Baker. No other witness or document in evidence vouches for the source, accuracy, or circumstances surrounding preparation of Exhibit 8 or of the disc from which Exhibit 3 was derived. There is no indication that the Texas Attorney General's investigator had personal knowledge of how the NCMEC report was prepared or of the NCMEC's practices when it receives a "cyber tip" from an Internet service provider. The Government does not contend that the NCMEC report is self-authenticating under Rule 902. Nor does it contend that this report is authenticated under Rule 901. The Government has not mentioned, much less

---

[11] FED. R. EVID. 803(6) ("Records of Regularly Conducted Activity.--A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record or data compilation, all as shown by the testimony of the custodian or other qualified witness, or by certification that complies with Rule 902(11), Rule 902(12), or a statute permitting certification, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.").

[12] See, e.g., id. Rule 901(b)(7) ("Public records or reports. Evidence that a writing authorized by law to be recorded or filed and in fact recorded or filed in a public office, or a purported public record, report, statement, or data compilation, in any form, if from the public office where items of this nature are kept.").

[13] See, e.g., id. Rule 902(2) (describing authentication of "Domestic public documents not under seal"); Rule 902(4) (describing authentication by presenting certified copies of public records).

briefed, the applicability of these rules to Exhibit 8. The record is devoid of any evidence authenticating Exhibit 8.

In light of the record as a whole, we conclude that the district court erred by admitting Exhibit 8 over Baker's objection that no foundation or predicate was offered. Although the issue is a close one, we cannot confidently say that this error was harmless. Exhibit 8 contains two lists of file names corresponding to images that Baker allegedly uploaded to Yahoo; it also states that the listed images "appear to contain child pornography." The jury could have inferred from Exhibit 8 that Baker uploaded child pornography to Yahoo. In fact, Exhibit 8—a report from the NCMEC—was the only evidence showing that Baker uploaded child pornography to the Internet; Exhibit 3 contained photographs of child pornography, but the photographs alone, taken out of context from the full NCMEC report, presented no evidence that Baker distributed pornographic files.

With regard to the admission of the child pornography images in Exhibit 3, "[t]o demonstrate plain error, [Baker] must show that the district court committed an error that was clear or obvious and that affected [Baker's] substantial rights."[14] We will only correct such an error if Baker can "show that the error has a serious effect on the fairness, integrity, or public reputation of judicial proceedings."[15] The only source in the record of the child pornography images Baker purportedly uploaded was Exhibit 3. The sole authenticator and sponsor of that exhibit was Dodge. Although Dodge testified without objection at trial that the images in Exhibit 3 were the ones uploaded to the Yahoo Web site, it is clear from reading the record in its entirety that the witness had no

---

[14] See Thompson, 454 F.3d at 464.

[15] Id.

personal knowledge of this fact.  At other junctures during the trial, it was apparent that he obtained the images from other state law enforcement officers, and that his only basis for testifying that these images were the ones uploaded to the Yahoo Web site and sent by Yahoo to NCMEC was statements to that effect in the NCMEC report.  Because the Government offered no witness competent to sponsor Exhibit 3, the admission of that exhibit was error.

Moreover, that error is plain.  The sponsoring witness clearly had no firsthand knowledge of the exhibit's chain of custody.  The Government offered no independent evidence sufficient to show that Baker uploaded to Yahoo the images in Exhibit 3.

Finally, we conclude that this error affected Baker's substantial rights. An error affects substantial rights if it "affect[s] the outcome of the district court proceedings."[16]  The only source of the images that Baker purportedly uploaded to Yahoo was Exhibit 3, so this exhibit was essential to Baker's Count 1 conviction for distributing child pornography.  The error in admitting Exhibit 3 affected the "outcome" of the proceedings by leading to a conviction on Count 1.

The Government notes that twelve of the forty-six images from Exhibit 3 were also found on Baker's home computer.  But without Exhibit 3, no evidence shows that Baker uploaded these images to the Yahoo Web site as opposed to downloading them from that or some other Internet source.  Because the evidence, other than Exhibit 3, to support the conviction for distributing child pornography was thin, at best, the error in admitting Exhibit 3 affected Baker's substantial rights.

---

[16] United States v. Olano, 507 U.S. 725, 734 (1993).

We also conclude that this error had a "serious effect on the fairness, integrity, or public reputation of judicial proceedings."[17]  In United States v. Avants, the district court suppressed before trial highly inculpatory statements by the defendant.[18]  The district court then stayed proceedings pursuant to 18 U.S.C. § 3731 pending the Government's appeal of the suppression order to this court.  On appeal, the Government raised for the first time a compelling argument that the suppression was erroneous.  We agreed that the suppression order constituted plain error.  In concluding that the error "seriously undermine[d] the 'fairness, integrity, and public reputation of the judicial proceedings,'" we "f[ou]nd it particularly important that the court's error resulted in the exclusion of [the defendant's] startling and candid admission . . . ."[19]  We characterized the suppressed evidence as "powerful evidence of guilt, the admission or exclusion of which would be highly likely to affect the outcome of the trial."[20]  If the erroneous exclusion of essential inculpatory evidence has a "serious effect on the fairness, integrity, or public reputation of judicial proceedings," we have no trouble concluding that the erroneous inclusion of such evidence does as well.

The Government asserts that its Exhibits 3 and 8 "were entirely derivative and cumulative," but the record simply does not bear this out.  Regarding the upload, other than the two challenged exhibits, the record contains only Government Exhibit 1, a two-page summary of the NCMEC report.  But that

---

[17] Id.

[18] 278 F.3d 510 (5th Cir. 2002).

[19] Id. at 522 (quoting Johnson v. United States, 520 U.S. 461, 467 (1997)).

[20] Id.

exhibit did not contain any images or file names of any images. The sole source in the record of the images that Baker was accused of distributing by uploading to the Yahoo jokerswilder Web site was Exhibit 3.

Because the admission of Exhibit 8 was harmful error, and because the admission of Exhibit 3 was plain error, we vacate Baker's conviction on Count 1. We reject, however, Baker's argument that the admission of those two exhibits requires reversal of the other three counts on which he was convicted. Counts 2 and 3 charge Baker with knowingly receiving child pornography on or about two separate dates. Count 4 charged Baker with knowingly possessing films, video tapes, or other materials containing child pornography on or about a particular date. The Government presented evidence of many images of child pornography on Baker's home computer and evidence of over 600 images of child pornography on the computer he used at work and on diskettes that were in his office. The erroneous admission of Exhibits 3 and 8 does not require reversal of these counts.

Because of our disposition of this case, we do not reach Baker's contention that admitting the NCMEC report without a witness who had personal knowledge of its content or preparation violated his Sixth Amendment right to confrontation.

*       *       *

For the foregoing reasons, we REVERSE Baker's conviction on Count 1 (distributing child pornography), and AFFIRM Baker's convictions on Counts 2, 3, and 4 (receiving and possessing child pornography). Because the district court imposed a special assessment for Count 1 pursuant to 18 U.S.C. § 3013, we additionally VACATE Baker's sentence and REMAND for resentencing.