NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted March 14, 2012[*]
Decided April 10, 2012

**Before**

DANIEL A. MANION, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

No. 11-3155

| | |
|---|---|
| STEPHEN M. BLOODWORTH, *Plaintiff-Appellant,* | Appeal from the United States District Court for the Eastern District of Wisconsin. |
| *v.* | No. 10-CV-00273 |
| VILLAGE OF GREENDALE and MILWAUKEE COUNTY, *Defendants-Appellees.* | William E. Callahan, Jr., *Magistrate Judge.* |

**O R D E R**

Police officers from the Village of Greendale, Wisconsin, arrested Stephen Bloodworth at his home and seized three guns from inside the residence. After a stationhouse interview, Bloodworth was taken to the Milwaukee County jail. Prosecutors

---

[*]The County of Milwaukee defended this lawsuit in the district court but did not file a brief in this court within the time allotted under FED. R. APP. P. 31(a). Nor did the County respond when we ordered it to show cause why this appeal should not be submitted without its brief and without oral argument. *See* FED. R. APP. P. 31(c); CIR. R. 31(d). After examining the appellant's brief, the brief of the Village of Greendale, and the record, we have concluded that oral argument is unnecessary. *See* FED. R. APP. P. 34(a)(2)(C).

charged him with disorderly conduct, and after a bail hearing he was released from the jail. The criminal charge was dismissed four months later. Bloodworth then sued the Village and County under 42 U.S.C. § 1983. His amended complaint is sparse, but a magistrate judge (presiding by consent) understood Bloodworth to claim that the Village police officers had lacked probable cause to arrest or search and also failed to give *Miranda* warnings promptly after the arrest. And, the court further surmised, Bloodworth claimed that County jail employees had mistreated him by ignoring his high blood pressure, not providing him access to a phone, and leaving him to fend for himself when they released him from the downtown Milwaukee facility after midnight. The district court granted judgment on the pleadings for the Village and summary judgment for the County, in both instances reasoning that Bloodworth had not alleged and could not prove any basis for municipal liability under *Monell v. Department of Social Services*, 436 U.S. 658 (1978). Bloodworth's scattershot brief challenges that reasoning and asserts numerous other claims. We affirm the judgment.

The facts material to the district court's decision are not disputed. Authorities encountered Bloodworth after his girlfriend's daughter called 911 and told the operator that he had pointed a gun at her and her boyfriend in the home they shared with her mother and Bloodworth. The daughter, who was standing outside the house when the Village police responded, repeated her story. Officers armed with assault rifles arrested Bloodworth at gunpoint and searched the house for firearms (they found and seized three guns). The police did not give *Miranda* warnings at the scene, but neither did they question Bloodworth (except to ask where he kept the handgun he had brandished). Instead they administered *Miranda* warnings at the station in front of a video camera. Bloodworth then consented to an interview and admitted pointing a gun (though it was unloaded, he insisted) at the daughter's boyfriend. His actions, Bloodworth told the officers, were in self-defense.

After Bloodworth was transferred to the County jail, his blood pressure was elevated, but he did not suffer any ill effects or ask for medical attention. Prisoners at the jail have unlimited access to telephones, but Bloodworth called no one during his 30-hour confinement because he did not understand how to operate the phones and did not ask anyone at the jail for assistance. The jail employees did not ask how he would get home when they released him after midnight, so Bloodworth used a lobby pay phone to call his nephew, who drove to the jail and gave him a ride. The charge was dismissed on the morning of trial because the daughter and boyfriend failed to appear as witnesses, but the judge denied Bloodworth's motion for return of his guns.

The Village moved for judgment on the pleadings, and the County moved for summary judgment. Bloodworth responded by moving for summary judgment against both defendants. In granting the defendants' motions, the district court reasoned that the two

municipalities could not be liable under § 1983 because Bloodworth had not alleged or submitted evidence that his constitutional rights were violated on account of Village or County policy or custom, or because of the actions of employees having policymaking authority. The district court denied Bloodworth's motions after concluding that the exhibits supporting his motion against the Village were not properly authenticated and thus inadmissible, and that his cross-motion against the County was "moot" in light of the court's favorable decision for that defendant.

On appeal Bloodworth principally challenges the district court's application of *Monell*, which holds that § 1983 suits cannot be premised on the doctrine of respondeat superior, and thus municipalities will be liable for constitutional deprivations only to the extent attributable to official policy or custom or to the actions of a person exercising policymaking authority. *See Los Angeles Cnty. v. Humphries*, 131 S. Ct. 447, 452–53 (2010); *Monell*, 436 U.S. at 694. Before addressing the merits, however, we note that the district court mishandled both of Bloodworth's motions for summary judgment.

First, as to the Village, the district court excluded wholesale the records Bloodworth had submitted from the police department; those records, the court said, are inadmissible hearsay because they are business records that have not been authenticated by a custodian or other person qualified to sponsor them at trial. *See* FED. R. EVID. 803(6). This understanding is incomplete. In general, business records offered at summary judgment must be authenticated with an affidavit from a qualified person, FED. R. EV. 803(6)(D); *Smith v. City of Chicago*, 242 F.3d 737, 741 (7th Cir. 2001), but an exception exists for documents that the opposing party itself has relied upon. *Thanongsinh v. Bd. of Educ.*, 462 F.3d 762, 778–79 (7th Cir. 2006); *Woods v. City of Chicago*, 234 F.3d 979, 988 (7th Cir. 2000). The Village already had submitted these same reports to the district court (without any form of authentication, we note) in arguing that defense counsel should be permitted to depose Bloodworth and the other residents of his house. Bloodworth had opposed those depositions, and the Village asserted that its police reports demonstrated that the people it sought to depose were material witnesses. Thus, the district court should not have excluded the police reports at summary judgment. Moreover, the district court never considered whether the reports would be admissible under Rule 803(8) as public records; this exception may apply here, and does not require the same form of authentication as Rule 803(6). *See United States v. Vang*, 1998 U.S. App. LEXIS 2780, *6–8 (7th Cir. 1998); *Dortch v. Fowler*, 588 F.3d 396, 402–03 (6th Cir. 2009); *United States v. Baker*, 538 F.3d 324, 331 (5th Cir. 2008); *Parsons v. Honeywell, Inc.*, 929 F.2d 901, 907 (2d Cir. 1991); *United States v. Orozco*, 590 F.2d 789, 793 (9th Cir. 1979); *United States v. Smith*, 521 F.2d 957, 967–68 (D.C. Cir. 1975).

Second, when the district court received cross-motions for summary judgment from the County and Bloodworth, the district court was not free to look favorably at the County's

motion and then deny Bloodworth's motion as "moot." Cross-motions must be evaluated together, and the court may not grant summary judgment for either side unless the admissible evidence as a whole—from both motions—establishes that no material facts are in dispute. *See Dynegy Mktg. & Trade v. Multiut Corp.*, 648 F.3d 506, 517 (7th Cir. 2011); *Davis v. Time Warner Cable of Southeastern Wis., L.P.*, 651 F.3d 664, 671 (7th Cir. 2011); *Las Vegas Sands, LLC v. Nehme*, 632 F.3d 526, 532 (9th Cir. 2011).

But these missteps were harmless because our review is de novo, *see* FED. R. CIV. P. 56; *Draper v. Martin*, 664 F.3d 1110, 1113 (7th Cir. 2011), and we have taken into account the admissible evidence excluded by the district court. *See Buie v. Quad/Graphics, Inc.*, 366 F.3d 496, 506 (7th Cir. 2004). The additional evidence changes nothing. *Monell* liability exists only if official policy or custom or the actions of a person exercising policymaking authority caused a constitutional violation. *See Humphries*, 131 S. Ct. at 452–53; *Monell*, 436 U.S. at 694; *Vodak v. City of Chicago*, 639 F.3d 738, 747 (7th Cir. 2011). Bloodworth presented no evidence showing that either the Village or the County had authorized their employees, through official policy or custom, to make arrests or search homes without probable cause, or conduct custodial interrogations without administering *Miranda* warnings, or mistreat arrestees.

And this leads to one final observation. The district court assumed, for ease of analysis, that Bloodworth had suffered constitutional deprivations and simply evaluated whether those violations could be attributed to the municipalities. But this lawsuit went to summary judgment, and we are unable to discern *any* evidence supporting Bloodworth's specific claims that the police or jailers infringed his constitutional rights. As for the Village, Bloodworth challenges only the existence of probable cause to arrest him, the seizure of his guns, and the perceived delay in giving him *Miranda* warnings. But his girlfriend's daughter stated to the 911 operator and again to the arresting officers that Bloodworth had pointed a gun at her and her boyfriend. Plainly there was probable cause to arrest Bloodworth and seize his firearms as evidence. *See Stokes v. Bd. of Educ.*, 599 F.3d 617, 624 (7th Cir. 2010); *McBride v. Grice*, 576 F.3d 703, 707 (7th Cir. 2009). Moreover, the officers could ask about Bloodworth's gun without *Miranda* warnings, *see United States v. Are*, 590 F.3d 499, 505–07 (7th Cir. 2009) (determining that police officers may ask arrestee suspected of having gun about location of weapon before reciting *Miranda* warnings), and he received those warnings before he was interviewed at the station. And as for the County, Bloodworth's contentions that he suffered constitutional deprivations are frivolous. He did not request medical care or tell the jail employees that he was unable to gain access to his medication for high blood pressure, nor did he experience any adverse side effects from being without his medication while at the jail. *See Greene v. Doruff*, 660 F.3d 975, 978 (7th Cir. 2011); *Knight v. Wiseman*, 590 F.3d 458, 464 (7th Cir. 2009). And jailers had no duty to ensure that

Bloodworth, a competent adult, could work the phones without assistance or find his own way home.

We have reviewed the remainder of Bloodworth's arguments, but none has merit.

AFFIRMED.