# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

October 4, 2022

Lyle W. Cayce
Clerk

No. 21-40903

United States of America,

*Plaintiff—Appellee*,

*versus*

Mariano Benjamin Gutierrez-Muñoz,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 7:19-CR-1097-4

Before Clement, Duncan, and Wilson, *Circuit Judges.*

Per Curiam:[*]

We are asked to determine whether a district court properly found Mariano Benjamin Gutierrez-Muñoz "maintained" a junkyard "for the purpose of manufacturing or distributing" methamphetamine. U.S.S.G. § 2D1.1(b)(12). For the following reasons, we AFFIRM.

---

[*] Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

## I

In 2019, Mariano Benjamin Gutierrez-Muñoz was charged with, among other things, conspiracy to distribute methamphetamine and heroin. A year later, he pled guilty to conspiracy to possess with intent to distribute 500 grams or more of methamphetamine and one kilogram or more of heroin. Prior to being arrested, Gutierrez-Muñoz owned and operated a junkyard. In a presentence investigation report (PSR), the United States Probation Office determined Gutierrez-Muñoz used his junkyard as a base of operations for a nationwide drug distribution scheme. Accordingly, the report recommended a two-level enhancement under U.S.S.G. § 2D1.1(b)(12) for "maintain[ing] a premises for the purpose of manufacturing or distributing a controlled substance." Gutierrez-Muñoz objected to the recommendation. At sentencing, the district court overruled the objection, adopted the report, and sentenced Gutierrez-Muñoz to 360 months in federal prison. Gutierrez-Muñoz timely appealed.

## II

United States Sentencing Guideline § 2D1.1(b)(12) provides for a two-level increase to a defendant's offense level if he "knowingly maintains a premises . . . for the purpose of manufacturing or distributing a controlled substance, including storage of a controlled substance for the purpose of distribution." Cmt. n.17. Per § 2D1.1(b)(12), the manufacturing or distribution of drugs doesn't have to be "the sole purpose for which the premises was maintained." *Id.* Instead, § 2D1.1(b)(12) only requires that "*one* of the defendant's *primary or principal uses* for the premises" be drug distribution. *Id.* (emphasis added).

A "district court's application of § 2D1.1(b)(12) is a factual finding reviewed for clear error." *United States v. Haines*, 803 F.3d 713, 744 (5th Cir. 2015). Consequently, we must determine whether the district court's §

No. 21-40903

2D1.1(b)(12) finding "is plausible in light of the record read as a whole." *United States v. Guzman-Reyes*, 853 F.3d 260, 263 (5th Cir. 2017) (quoting *United States v. Villanueva*, 408 F.3d 193, 203 (5th Cir. 2005)).[1]

Here, Gutierrez-Muñoz contends the district court erred in finding his junkyard's "primary purpose was . . . the storage and distribution" of methamphetamine. Gutierrez-Muñoz maintains that, in applying § 2D1.1(b)(12), the district court exclusively and inappropriately relied on the single "conclusionary statement" of a Drug Enforcement Administration officer. The PSR recites a case agent's finding that "there is no information to indicate the junkyard . . . was utilized for legitimate business purposes." At sentencing, Gutierrez-Muñoz objected to the statement and insisted his junkyard was a "legitimate business." The district court overruled Gutierrez-Muñoz's objection and adopted the PSR's factual findings, including the case agent's statement.

## A

As an initial matter, we must determine whether the district court properly relied on the PSR at sentencing. When sentencing a defendant, a district court "may consider any evidence 'which bears sufficient indicia of reliability to support its probable accuracy, including hearsay evidence.'" *United States v. Nava*, 624 F.3d 226, 230–31 (5th Cir. 2010) (quoting *United States v. Solis*, 299 F.3d 420, 455 (5th Cir. 2002)). A presentence investigation report "generally bears sufficient indicia of reliability to be considered as evidence by the sentencing judge in making factual determinations." *Id.* at 231 (citation omitted). If a defendant disagrees with

---

[1] Notably, the parties dispute whether the plain error or the clear error standard applies. We find this issue inconsequential because the district court's determination passes muster under either standard.

any evidence offered at sentencing, he "bears the burden of demonstrating that the information cannot be relied upon because it is materially untrue, inaccurate or unreliable." *United States v. Rodriguez*, 602 F.3d 346, 363 (5th Cir. 2010) (citation omitted). Objections alone are "*not* evidence," but simply "unsworn assertions." *Id.* (citation omitted) (emphasis in original).

After reviewing the record, we find Gutierrez-Muñoz's challenge to the PSR is flawed for two reasons. First, Gutierrez-Muñoz did not submit any rebuttal *evidence*. In response to Gutierrez-Muñoz's insistence that his junkyard was a "legitimate business" because "[h]e worked on cars" and "scraps" there, the district court correctly noted there was "no evidence" to prove that. Gutierrez-Muñoz never offered the district court receipts, contracts, or any other routine documents evidencing the operation of a business. Instead, he relied on representations and objections, or "unsworn assertions." *Rodriguez*, 602 F.3d at 363. Second, and relatedly, the PSR bears clear signs of reliability. As a whole, the information related to Gutierrez-Muñoz's junkyard flows from a criminal investigation that was corroborated by a co-conspirator. We have held such information is "sufficiently reliable" for sentencing purposes. *See United States v. Rico*, 864 F.3d 381, 385–86 (5th Cir. 2017). Consequently, considering the record and Gutierrez-Muñoz's lack of a rebuttal, we find the PSR and its contents, including the case agent's statement, carry the requisite indicia of reliability.

**B**

As for § 2D1.1(b)(12), Gutierrez-Muñoz plainly admitted his junkyard was used for drug-related purposes. Per the record, Gutierrez-Muñoz used the junkyard to receive speaker-boxes full of "narcotics" and re-package them into metal boxes "which were welded closed" on-site. During the re-packaging, Gutierrez-Muñoz and his associates wore "mechanic's shirts . . . to give the impression they were working." Gutierrez-Muñoz also admitted

that he stored vehicles on-site to use as drug "transport[s]" for smuggling the metal boxes across the country. Meanwhile, the officers surveilling Gutierrez-Muñoz's drug operations could not find any evidence, such as regular customers, to suggest the junkyard was a legitimate business.

Consequently, after reading the record, we find the district court could plausibly determine that one of the junkyard's primary uses was to distribute methamphetamine. Gutierrez-Muñoz, while donning the uniform of his trade, used his junkyard to conceal methamphetamine in welded-containers, load the containers into vehicles warehoused on-site, and ship the containers across the country. At the same time, the junkyard consistently lacked customers and observing officers saw little commercial activity that could mitigate the district court's "primary use" finding. In short, a court could reasonably conclude Gutierrez-Muñoz was a "pretty big player" who ran a drug "transportation [cell] out of his junkyard." Accordingly, we cannot find the district court clearly erred when it applied § 2D1.1(b)(12) to Gutierrez-Muñoz's offense level.

We AFFIRM.